[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties intermarried in Hoboken, New Jersey on August 18, 1975. They have resided continuously in this state for the last sixteen years, and all statutory stays have expired. Therefore, this court has jurisdiction. They have two children, both of whom have reached majority. The evidence clearly indicates this marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
The plaintiff (hereinafter "wife") is 51 years old and in generally good health. She holds a bachelor of arts degree in modern languages and education, a master's degree in education and a six year teaching certificate. In addition to filling the role of mother and homemaker, she has worked on a regular basis throughout the marriage. She currently holds a significant position with the board of education for the city of Stamford.
The defendant (hereinafter "husband") is 56 years old. He has a bachelor of science degree in general science and a master's degree in physics. During the entire marriage he has been employed by International Business Machines (IBM) in Spain with assignments in the United States during the last several years. The most recent assignment was as an international sales office representative with IBM Spain, Portugal and Latin America, in which he acted as a liaison between those countries and the IBM corporation. He was recently terminated by his employer as of June 30, 2002, after thirty years of service.
The husband currently suffers from a depression and is being treated by a psychiatrist. Based on the evidence presented, the court finds that this condition has been primarily caused by the stress surrounding this dissolution action and the loss of employment. There is no indication that this condition will be permanent. When the stressors have been removed with the conclusion of this proceeding, the husband will be reevaluated by his doctor.
The husband has no significant physical ailments and is currently seeking employment. Based on his educational background, employment history and his obvious intelligence, he should be able to find suitable employment in the foreseeable future. CT Page 8900
A great deal of evidence was presented as to the causes for the breakdown of this marriage. The husband attributed the wife's infidelity as the reason. The wife did not deny having a relationship but disputed only the extent of her involvement with the gentleman. The wife claimed the marriage had broken down irretrievably over ten years ago and her new friendship started recently. The wife's reason for the marital breakdown was the obsessive and dominating behavior of her husband.
The court finds that, although the husband may not have been made aware of the wife's feelings about the state of their marriage, that the marriage had broken down irretrievably long before the wife started another relationship. Therefore, her current arrangement is not the cause of the breakup of the marriage. See Venuti v. Venuti, 185 Conn. 156
(1981). The husband's behavior was a substantial factor in causing the failure of the marital relationship.
The court has carefully considered the criteria set forth in General Statutes Sections 46b-62, 46b-81 and 46b-82 in reaching the decisions reflected in the orders that follow.
The property division set forth hereinafter is intended to be an approximate equal allocation of assets. The division of the liquid assets is based on the financial affidavits of the parties (dated July 2 and July 4, 2000) as adjusted by the evidence presented at trial.
Although the fair market value of the marital residence will be determined at the time of sale, the court finds its current value to be $1,155,000 ($1,215,000 less 5% margin for error).
The following orders may enter:
(1) During his lifetime the husband shall pay to the wife as periodic alimony the sum of one ($1.00) dollar per year until the death of the wife, her remarriage or cohabitation as defined by statute, whichever event first occurs.
(2) During her lifetime the wife shall pay to the husband as periodic alimony the sum of one ($1.00) dollar per year until the death of the husband, his remarriage or cohabitation as defined by statute, whichever event first occurs.
(3) The wife is awarded the following assets:
A. Sole checking, savings and credit union accounts; CT Page 8901
B. Sole Citibank account;
C. Sole Washington Mutual account;
D. Sole Banquo de Bilboa account;
E. Sole Safe Deposit contents;
F. One-half of the IBM stock;
G. From the joint Fidelity Mutual fund the sum of $140,000.
(4) The husband is awarded the following assets:
A. Sole checking accounts in USA Alliance;
B. Sole checking account in Citibank;
C. Sole checking account in People's Bank;
D. Sole checking account in BBVA, Madrid;
E. Sole checking account in Banco Popular — Madrid;
F. Miscellaneous inactive accounts in Spain;
G. Sole stock account, USA Alliance;
H. Sole stock account BBVA, Madrid;
I. Sole stock account, Urquijo Bank, Madrid;
J. One-half of the IBM stock;
K. From the joint Fidelity Mutual fund, the entire balance after payment of $140,000 to the wife;
(5) — Each party has a pension. The wife has a pension with the city of Stamford and the husband with IBM Spain. Each party shall receive a 50% interest in the other's pension. If permitted, this shall be accomplished by way of either a qualified domestic relations order or by domestic relations orders.
If either pension does not permit a secured interest, then each party shall produce appraisals of the current value of each pension. Each party shall retain her and his own pension and the party having the greater CT Page 8902 current pension value shall pay to the other 50% of the difference between the two pension values.
The court reserves jurisdiction to effectuate this order.
(6) The joint BBVA, Madrid deferred compensation plan shall be equally divided between the parties.
(7) The severance payments, net of taxes, received by the husband from IBM Spain, if any, shall be equally divided between the parties.
(8) Commencing August 15, 2002, the wife shall have exclusive possession of the marital residence at 71 Greenleaf Avenue, Darien, Connecticut. She shall be responsible for all real estate taxes, insurance, and other expenses in reference to the property except for major repairs. Major repairs, that is expenses in excess of $250, shall be shared equally by the parties.
No later than July 1, 2003, the residence shall be listed for sale. After payment of any real estate broker's fees and other closing costs, the proceeds shall be equally divided by the parties.
The court reserves jurisdiction to resolve any disputes in reference to the sale, including the broker to retain, the listing price and the sales price.
(9) The garden apartment located at Dalia #363 Soto de Ia Moraleja, Madrid, Spain, shall be immediately listed for sale. After payment of the customary and usual closing costs of sale in Spain, including real estate broker's fees, if any, the proceeds shall be equally divided by the parties.
The court reserves jurisdiction to resolve any disputes in reference to the sale, including choice of broker, the listing price and the sales price.
In the event this property is not sold by the time the marital residence is sold, there shall be held in escrow, by an agent designated by the wife's attorney, from the husband's share of the proceeds from the sale of the residence the sum of $150,000. The money shall be placed in an interest bearing account. When the garden apartment is sold, the wife's share of the sale proceeds shall be paid from the escrow funds, and the balance of the escrow funds, including the interest earned, shall be turned over to the husband.
The court reserves jurisdiction to resolve any disputes involving the CT Page 8903 placement and/or management of the escrow funds, release or substitution of the escrow account and if any adjustments are required due to the inability to sell the apartment or in the event an insufficient amount was held in escrow.
(10) The apartment located at Puerto de Ia Cruz Verde #35, Madrid, Spain, shall be immediately listed for sale. After payment of the customary and usual closing costs of sale in Spain, including real estate broker's fees, if any, the proceeds shall be equally divided by the parties.
The court reserves jurisdiction to resolve any disputes in reference to the sale, including choice of broker, the listing price and the sales price.
In the event the property is not sold by the time the marital residence is sold, there shall be held in escrow, by an agent designated by the wife's attorney, from the husband's share of the proceeds from the sale of the residence, the sum of $50,000. The money shall be placed in an interest bearing account. When the apartment is sold, the wife's share of the sale proceeds shall be paid from the escrow funds, and the balance of the escrow funds, including the interest earned, shall be turned over to the husband.
The court reserves jurisdiction to resolve any of the similar disputes that may arise as set forth above in reference to the escrow funds held in the sale of the garden apartment at Dalia #363.
(11) The husband is awarded the apartment at Plaza de Chueca #8, Madrid, Spain. The wife shall execute all documents required to transfer her interest therein to the husband.
(12) The husband is awarded all his rural properties, lots and buildings located at Veldedo, Spain.
(13) The husband shall pay to the wife for her interests in the apartment at Plaza de Chueca #8 and rural properties the sum of $50,000. Payment shall be made at the closing of the sale of the marital residence.
(14) The wife shall assist the husband in exercising any COBRA rights he may have under the wife's medical insurance policy. The husband shall be responsible for all premium costs.
(15) All the furniture and furnishings in the marital home are awarded to the wife, except the 14 watercolor paintings which are awarded to the CT Page 8904 husband.
(16) The husband shall transfer to the wife the ownership of the 2000 Toyota automobile.
(17) The 1993 Chrysler minivan, the 1988 Mitsubishi and the 1995 Jetta shall be the sole property of the husband.
(18) The husband shall pay to the wife as a contribution to her counsel fees the sum of $25,000. Payment may be made at the time the marital residence is sold.
(19) Each party shall be solely liable for the debts listed on her/his financial affidavit and indemnify and hold harmless the other from any liability thereon.
(20) If any United States federal or state tax assessments are made for any years the parties filed joint returns, each party shall be responsible for any amount found to be due in proportion her or his income bears to the combined incomes.
Judgment may enter accordingly.
NOVACK, J.T.R.